## SALT'S TEXTILE MFG. CO. v. TINGUE MFG. CO.

(District Court, D. Connecticut. August 13, 1915.)

No. 1379.

1. PATENTS ⊂⊃49—VALIDITY—PRESUMPTION FROM INFRINGEMENT.
   As against an infringer there is a presumption of utility in the patented article, and the infringement is also a strong indication of invention.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 59-62; Dec. Dig. ⊂⊃49.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. PATENTS ⬤⟼16—PATENTABILITY—IMPROVEMENT.

The slightest changes which effect a new improvement may be patentable; the test is whether the invention is patentable, when considered, not with reference to any one thing in particular, but to everything in general.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec. Dig. ⬤⟼16.]

3. PATENTS ⬤⟼81—ANTICIPATION—PRIOR USE.

Prior use, in order to show anticipation, must be proven beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. ⬤⟼81.]

4. PATENTS ⬤⟼112—ANTICIPATION—PRESUMPTION FROM GRANT.

Where the evidence of anticipation in an infringement suit is not substantially different from that considered by the Patent Office, the presumption is that the patent discloses such an amount of change from the prior art as to amount to invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ⬤⟼112.]

5. PATENTS ⬤⟼328—VALIDITY AND INFRINGEMENT—KNIT FABRICS.

The Steiner patent, No. 886,886, for a knit fabric and method of making same, which consists of curling the yarn before knitting to produce a fabric of the astrakhan type, was not anticipated, and discloses invention; also held infringed.

In Equity. Suit by the Salt's Textile Manufacturing Company against the Tingue Manufacturing Company. On final hearing. Decree for complainant.

See, also, 208 Fed. 156.

Charles S. Jones, of New York City, for plaintiff.

Stephen J. Cox and Clarence G. Campbell, both of New York City, for defendant.

THOMAS, District Judge. This is a suit for infringement of letters patent of the United States, No. 886,886, granted to Richard J. Steiner, assignor of the plaintiff, May 5, 1908, for an invention relating to a knit fabric manufactured upon a stockinet machine.

The patent has six claims, the first and second of which cover the fabric and the remaining four the method of making it. The invention of the patent relates to a knit fabric of the astrakhan type, having back and face yarns; the latter being united to the former by tying-in yarn and the face yarn being curled, so as to produce by the knitting operation itself a fabric having a mass of closely and uniformly disposed links or curls over its entire face. And it seems fairly inferable from the prior art, as disclosed by the evidence and disclaimed by the specification, and by the proceedings in the Patent Office preliminary to the granting of the patent, that the real advance in the art made by the patentee was in curling the face yarns prior to the knitting operation, although the use of curled or crimped yarns was old, so that there was obtained on the knitting cylinder a fabric in which the curls are of substantially uniform height, approximately regular in form, and so close together that the back is not materially exposed. The operations of dyeing, washing, singeing, and shearing,

which follow after the fabric is taken from the machine, are not relied upon to produce the curled effect of the fabric. Briefly, the essential feature of the manufacture is the making of a knit fabric by first curling and setting the face yarn to the described form and condition, then straightening the yarn so that it may be properly placed upon the needles, and then permitting the yarn to resume its normal condition on the needles. It is unfair to the patentee to impose upon the patent a construction which makes it one for curled yarns. The patent is rather for a knit fabric in which is used a face yarn curled, previous to the knitting, to the condition it assumes in the fabric. The patentee is very explicit as to what is meant by a curled yarn. In his specification he not only describes the yarn, but illustrates it, as in the following language:

"The yarn which is to constitute the face is first run through a curling machine to produce a yarn having a succession of substantially uniform rings, curls, or loops as indicated, for example, in Fig. 3; the rings or curls being regular in form and closely disposed."

Later on in his specification he says:

"A very distinct and important advantage results from the use of a previously curled yarn, in that the rings or curls become set in the yarn prior to the knitting operation, and are thus not liable to uncurl or assume an abnormal condition in the finished fabric."

This illustration and description make certain what it is that the patent proposes to use, and it is clear that what the patentee intended to describe and claim was a yarn having regular and closely disposed links, such as appear in the patent. This view of the patent is strengthened by the fact that the patent was granted after an appeal from the primary examiner, who rejected the applications upon the Bywater patent, No. 374,888, the Wrightson patent, No. 393,734, the Marchetti patent, No. 436,368, and the British patent No. 3,447 of 1894, for the reason, stated by the examiners in chief, that there was not—

"in either the Bywater or Wrightson patent a fabric in which the face yarn is curled to the condition it assumes in the fabric previous to the knitting operation; nor do we think that applicant's product is lacking in invention because it so happened that Marchetti disclosed the use of previously curled yarn in the manufacture of a cut pile fabric. At most Marchetti's disclosure only goes to show that a previously curled yarn was old in the art of woven pile fabrics."

[1] As the same patent may cover both a process and a product, in the absence of any self-imposed restriction by the patentee, the claims can stand together, if both the process and the product are new and useful. Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235. And if the process and the product of the defendant are identical with that shown by the patent, there is a presumption of utility, especially if infringement is not denied, as in the case here. It does not lie in the mouth of an infringer to deny the utility of a patent. The presumptions are, at least, against him. Du Bois v. Kirk, 158 U. S. 58, 64, 15 Sup. Ct. 729, 39 L. Ed. 895, and the cases therein cited. Moreover, if an infringer has seen fit to depart from the many articles and methods open to his use, and to adopt that of the patentee, there is

a strong indication that the patent marks a distinct and useful advance in the progress of the art. Brammer v. Schroeder, 106 Fed. 918, 46 C. C. A. 41.

The vital point of this controversy results in the fact that the evidence, taken as a whole, discloses that prior to the Steiner invention the art of making fabrics contained no knit fabric having a face yarn curled previously to the knitting operation and to the condition it assumes in the finished fabric. Even if the evidence does show that a woven fabric had been made with a curled yarn prior to the use by Steiner of a curled yarn in a knit fabric, it does not follow that Steiner's fabric did not involve invention, especially if, by using the curled yarn in his patent, he accomplished a new and useful result. It is immaterial whether the evidence shows a case of direct anticipation—that is, whether the patented article or method and those alleged to anticipate it are compared as a whole—or a case where the patented improvement rests upon changes in form, situation or degree.

[2, 3] The slightest changes which effect a new improvement may be patentable. The test in such cases is whether the invention is patentable generally—that is, when considered, not with reference to any one thing in particular, but to everything in general; and in such cases the prior uses, in order to show anticipation, as in cases of direct anticipation, "must be proven by evidence so cogent as to leave no reasonable doubt in the mind of the court." Mueller v. Glauber, 184 Fed. 609, 106 C. C. A. 613; Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153; Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017.

The prior published art consists of the patents referred to by the Patent Office pending the application for the patent, and the British patent of 1861 to Tolhausen, No. 2,126, the British patent to Spannagel of 1885, No. 9,465, and a publication by Posselt. The British patents and the Posselt publication do not disclose any art substantially different from the American patents. These were relied upon by the primary examiner in rejecting the patent.

The prior public uses relied upon are: (1) The Knit Fabric Company's prior use; (2) the French & Ward prior use; and (3) the Hanifen prior use. The prior published art and the three prior uses will be discussed in order.

[4] I. It is sufficient to say of the prior published art that the additional British patents and the Posselt publication do not disclose any art substantially different from that under consideration by the Patent Office when the patent was granted. The Patent Office ruled that these patents did not disclose equivalents of the Steiner patent. The defendant has introduced no expert testimony explaining these patents and publications, and the court is left to the presumption that the patent itself possesses such an amount of change from the prior art as to entitle it to the presumption which attaches to a patent. Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821; Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017; Hutter v. Broome (C. C.) 114 Fed. 655, 657.

II. The alleged prior use by the Knit Fabric Company of curled yarn, so strenuously relied upon by the defendant, may possibly show a small amount of *crimped* yarn; but it certainly was not *curled,* nor was it the curled yarn of the patent. Its production was largely accidental, and its utility was not perceived by any one, and therefore could not constitute anticipation. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. The other "spiral spring" or "corkscrew" yarn of the Knit Fabric Company must be regarded, in view of the evidence, as nothing more than an unsuccessful, abandoned experiment, and not accessible to the public, and therefore not amounting to anticipation. Matheson v. Campbell (C. C.) 69 Fed. 597, 604.

III. The French & Ward prior use consisted only of a glove astrakhan or glove cloth, and the yarn used in making it was a hard-twisted, two-ply, straight worsted, which was made in the ordinary way for making regular astrakhan, and the loops which appeared upon the finished fabric were due simply to the character of the hard-twisted yarn, which enabled it to loop or knit up after the finishing operation. The testimony as to this prior art has not the essential element of the proof required. Deering v. Winona Harvester Works, supra.

IV. The Hanifen prior use relates to a fabric knit by using the Bywater patent, No. 374,888, and which the patent in suit admits and disclaims. It was really nothing but crimped yarn, as I view the evidence, unsuited for commercial purposes when it was made, and equally ill-fitted for present day methods. At the most it was a knit fabric, spun and raveled to make it a wavy yarn. No satisfactory evidence of the mechanism or the yarns has been produced, and the evidence comes within the same condemnation as do the other prior uses.

[5] These alleged prior uses, taken as a whole, go little, if any, further than does the prior published art. The substance of the whole matter is this: Glove cloth, having on its face a series of loops, is the only fabric made by any of the alleged prior users. It was sold in comparatively small quantities. A previously curled yarn was not used in such manufacture, nor was there used a yarn curled to the condition it assumes in the fabric. All that can be said of any of these prior uses is that a wavy or crimped yarn, but not a curled yarn, was used by some of these manufacturers, while others used simply a hard-twisted, straight yarn. Furthermore, this glove astrakhan, or glove cloth, was never recognized by any one as the same as that of the Steiner patent, and it never effected the kind of results attained by the patented fabric, because it lacked the very thing which gave the latter its success as an imitation of real Persian lamb.

The conclusion is imperative that the defendant has not discharged itself of the burden cast upon it, and that the patent must be held valid.

Let an injunction issue, together with a reference to a master for an accounting. Decree accordingly.