## WILSON v. TOWNLEY SHINGLE CO.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1903.)

No. 1,563.

1. PATENTS—INFRINGEMENT—SHINGLE-EDGING MACHINE.
    The Sears patent, No. 335,635, for an attachment to shingle machines for edging shingles, consists of a combination of mechanical elements, all of which were old, to accomplish a result which was not new, since similar machines had long been used to trim boards to a uniform width. The patent is therefore not of a primary character, and, if it discloses patentable invention, must be limited to the precise construction shown, and is not infringed by a machine in which any element of the patented machine is lacking.

2. SAME—SUFFICIENCY OF PROOF.
    A case of infringement is not made out where the undisputed testimony shows that the alleged infringing machine was made and in use prior to the filing of the application for the patent sued on, and there is no evidence to carry the date of invention back of such filing.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

W. F. Hill (H. F. Auten, on the brief), for appellant.
N. F. Lamb and J. F. Gautney, for appellees.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge. This is a patent suit, being a bill filed by T. O. Wilson, the appellant, against the Townley Shingle Company, a firm consisting of M. L. Townley and N. H. Townley, appellees, to restrain the infringement of a patent. Two patents are found in the record, and considerable testimony relating to each, but a grave doubt arises in our minds as to whether the bill charges an infringement of one of these patents or both. As originally filed, the action was founded on letters patent No. 335,635, dated February 8, 1886, and issued to James N. Sears for "a certain new and useful attachment to shingle machines for edging shingles." The bill was

in the usual form. It alleged that this patent to Sears had become the property of the complainant, Wilson, by assignments theretofore regularly made; that the Sears patent, subsequent to its acquisition by the complainant, had been infringed by the defendants; and that the complainant was entitled to an injunction against further infringement, and to an accounting of damages and profits, for which he prayed. After the defendants had answered, denying all of the material allegations of the original bill, and more than a year after the filing of that bill, the complainant asked and obtained leave to amend. This was done by filing a supplemental allegation to the effect that since the complainant acquired the Sears patent he had obtained another patent for improvements thereon; being letters patent No. 459,031, dated and issued September 8, 1891. In the amended pleading the complainant did not allege that the invention or improvement covered by the last patent had been infringed, while the original bill charged specifically the infringement of the Sears patent, and none other; the allegation in that respect being that the defendants had done certain acts "in infringement of the said exclusive rights secured to the said James N. Sears by the letters patent aforesaid, and granted and assigned by him to your orator, as hereinbefore set forth." Moreover, the patent that was issued September 8, 1891, contained no reference to the Sears patent, but on its face purported to be a patent for an independent device for edging shingles, which the complainant had invented. It follows, as a matter of course, that if the bill does not properly charge the defendants with an infringement of the patent issued to the complainant on September 8, 1891, the present appeal does not properly involve any consideration of the infringement of that patent. Counsel for the appellant seem to contend, however, that the machines which the defendants make and use are a copy of the machine described in the patent to Wilson of date September 8, 1891, and that the making and use of such machines is an infringement of that patent as well as the Sears patent. At one place in their brief, after referring to the Wilson patent, No. 459,031, they say "and this is the machine that defendants habitually copy now when they wish to make and run a dimension shingle maker." There is no evidence in the record, so far as we can ascertain, that the defendants ever made or used any other machine than the one which is thus claimed to be a copy of the Wilson machine. Nevertheless, if we correctly understand counsel for the appellant, it is urged that the use of this machine operates as an infringement of the Sears as well as the Wilson patent. We have deemed it best, therefore, to consider this contention, waiving for the time being the suggestion above made that the bill, when properly interpreted, does not charge an infringement of the Wilson patent.

Cuts representing the respective machines covered by the Sears and Wilson patents will be found on the adjoining page. We have not been favored with any cut representing the machines used by the defendants, but must rely on very general oral descriptions of the same. This defect in the record renders it difficult to institute a critical comparison between the three devices.

Referring first to the cut representing the Sears machine, it will be observed that it consists of a rectangular table or frame, with a shaft at each end carrying pulleys, an intermediate shaft carrying saws, to which a pulley, 19, is attached, and another intermediate countershaft to which the pulley numbered 13 is attached. Over the pulleys, borne by the shafts at each end of the frame, run endless belts, indicated by figures 6 in the drawing. Between the pulleys and secured to the frame are spacing boards, 7, which may be of the same

width or different widths. Slots are cut in these spacing boards, through which the saws protrude. Metal carriers are fastened to the belts by rivets so as to move with them and push the shingle against the saws. When in operation the butts of the shingles are placed against certain pins (indicated by figures 12 in the drawing), which are set at the rear end of the spacing boards. As the belts bring the carriers around, they serve to push the shingles forward and bring them into contact with the saws. The object of the device, as it seems, is to trim the shingles and make them of an uniform width. The patentee claims, in combination, first, the structure or frame; second, the spacing strips or boards, having slots for the saws, and pins set at the rear end thereof; third, the saws secured on the shaft; fourth, the belts working over pulleys; and, fifth, the carriers secured to the belts—"all constructed and arranged substantially as shown and described, and for the purposes set forth."

Referring to the drawing representing the machine covered by the Wilson patent, it will be observed that it consists of a rectangular table or frame, with shafts at each end, carrying wheels or pulleys, and an intermediate shaft carrying saws which protrude for a short distance through slots in the top of the table or frame. The shafts at the respective ends of the table carry sprocket wheels, $a^3$, while over these sprocket wheels pass two endless sprocket chains, $a^5$, which run in grooves in the top of the table. Secured to these sprocket chains are wooden carriers, B, consisting of straight pieces of wood having slots sawed therein so that they will readily pass over the saws. In operating this machine the operator stands at the rear end, places the butts of the shingles against the carriers, B, which push them against the saws, which in turn trim them to uniform widths. The claim of this patent is, in substance, for a shingle-edger, consisting of a frame having saw-slots and chain-grooves in its upper side or top; side-strips (indicated in the drawing by $b^2$) to prevent shingles from sliding off from the table; the three shafts above described; the sprocket wheels; the sprocket chains; the slotted carriers; the various pulleys or wheels that are borne by the shafts and disclosed by the drawing; and also the several belts by which various parts of the machine are actuated. The location of these belts is indicated by the dotted lines in the drawing on the left-hand side of the frame or table.

There is testimony in the record, which is wholly undisputed, that, long before the issuance of the patents in suit, circular saws mounted on a shaft, either singly or in gangs, had been employed to edge boards and to cut lumber into strips of equal or varying widths; also that sprocket chains, propelled by sprocket wheels, and having metallic or wooden carriers attached thereto to convey materials to gang saws, had been in use for an equal length of time. If there was no such testimony as this, we could probably take judicial notice of the facts in question, because they must have been observed by all persons of average intelligence who have seen planing mills, saw mills, box factories, and machines for cutting laths, in operation. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200. All the elements of the machine covered by the combination described and claimed in the

Sears patent are undoubtedly old. Moreover, the work done by that machine is not a new kind of work, since the trimming of shingles so that they will be of the same width is strictly analogous to the cutting of boards or slabs into strips of the same width. The Sears patent, therefore, is not of a primary character. He simply made use of old mechanical devices in constructing a machine for trimming shingles when the same devices had long been employed for the purpose of trimming boards and cutting them into strips. If it be true, therefore, that the elements which make up the Sears combination had never, before the date of that patent, been placed in precisely the same relation to each other as he placed them, yet it is by no means certain that the construction of his machine called for the exercise of the inventive faculty. In view of the state of the art, it would seem, rather, that any person who desired to trim shingles, after they were sawed, so that they would be of the same width, would have had little difficulty, by the exercise of ordinary mechanical skill, in producing a machine that would do that work. The construction of such a machine would not seem to have been a difficult undertaking. It merely involved the placing of old and well-known mechanical devices in such a relation to each other as would naturally suggest itself to a mechanic who was accustomed to work in planing mills or sawmills, when he was advised of the end to be accomplished. In view of the considerations to which we have last adverted, it is certain, we think, that the patentee of the machine in question cannot invoke a broad construction of the claims of the patent, nor a liberal application of the doctrine of equivalents, no matter what view may be taken concerning the question of invention and the patentability of the Sears machine. The case is one where, even if the inventive faculty, as distinguished from ordinary mechanical skill, was exercised, yet, as the invention is not primary, and the patent of doubtful validity, the patentee should be limited to the specific form of machine which he produced, and describes in his specification. He accomplished nothing which entitles him to protection, save as against those who reproduce his machine, or reproduce it with merely colorable evasions of his claims. Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; Morley Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Stirrat v. Excelsior Mfg. Co., 10 C. C. A. 216, 61 Fed. 980.

The claim of the Sears patent to which the charge of infringement relates is a combination claim, consisting of five elements. It goes without saying that, if any one of these elements is not found in the machines in use by the defendants, they do not infringe the Sears patent. Now, in his specification, Sears carefully describes what he terms in one place "spacing-boards," and in another place "spacing-strips," having pins set in the rear end thereof, against which the thick ends of the shingles are placed. He also specifically claims these spacing-boards or strips, with the pins set therein and protruding therefrom, as one of the material elements of his combination. The defendants' machine, on the other hand, as described by the

various witnesses, has no spacing-boards or spacing-strips with pins set therein. The top of the table or frame of the defendants' machine is a plain surface inclined at an angle of about 25 degrees, along which two sprocket chains, to which wooden carriers are attached, travel lengthwise of the table. No spacing-boards or spacing-strips are found in the structure, nor are there any pins set in the table against which the ends of shingles are placed when the machine is in operation. Several other differences in the method of constructing the two machines have been pointed out. For example, the defendants' machines have no countershaft such as is found in the Sears machine. The Sears machine also has a greater number of pulleys, and the power to run it is applied somewhat differently. But without reference to these minor differences, we think the fact that the defendants' machines have no spacing-boards with pins in the ends thereof, such as are described and claimed in the Sears patent, and also shown in the drawings of that patent, differentiates the two machines, and exempts the defendants from the charge of infringement.

The shingle-edging machines of which complaint is made, that had been used by the defendants in some of their mills for nearly 10 years before the bill of complaint was filed, bear a strong resemblance to the machine described in letters patent No. 459,031, which was issued to Wilson, September 8, 1891, on an application filed March 14, 1891, although they are not in all respects alike. The chief differences to be noted are these: The top of the frame of the defendants' machine is inclined at an angle of 25 degrees, while the top of the table or frame of the machine as described in the patent appears to be nearly level. Again, the defendants' machines have one shaft at each end, which turn in the same direction, while the Wilson machine has corresponding shafts that turn in opposite directions. Moreover, there seems to be considerable difference in the arrangement of the belts by which the respective machines are actuated. These differences might or might not serve to differentiate the two machines, but we deem it wholly unnecessary to consider or express an opinion on that point. One of the defendants, who appears to have been called as a witness by the complainant, in the course of his examination testified, in substance, that his firm commenced using shingle-edging machines in the early part of the year 1890; that they constructed the machine in question themselves, according to their own ideas, purchasing the necessary irons therefor; and that they had been using such machines in their mills up to the date of his examination, which appears to have been taken in January, 1901. No effort was made by the complainant to disprove these statements, and permission was given the complainant to take photographs of the machines then in use by the defendants in their mills, to which the testimony related. No such photographs appear to have been taken, or, if they were, they have not been incorporated in the record. We must accordingly assume that the statements so made by the witness aforesaid are entirely trustworthy, and as the Wilson patent was not issued until September 8, 1891, and as the application therefor was filed on March 14, 1891, it appears that the de-

fendants had constructed and were using the machine which is now said to be an infringement of the Wilson patent for about a year before that patent was applied for and issued. No attempt was made by the complainant to show the actual date of his invention, and in a case of this sort we will not presume that the invention was made prior to the time when the defendants constructed and began to use in their mills the shingle-edging machines which they are now using. If such be the fact, the complainant should have established it by competent evidence, or shown that the defendants did not construct their shingle-edging machine at the time stated, nor until subsequent to the date of Wilson's alleged invention.

It follows from what has been said that, even if the bill be construed as charging the infringement of the Wilson patent as well as the Sears patent, the charge is not sustained by the proof, while the proof does show that, if the defendants' machine is substantially like the Wilson machine, he was not the first inventor thereof, but the credit for the invention is due to the defendants. The decree below was for the right party, and should be affirmed.

It is so ordered.