## IMPERIAL BRASS MFG. CO. v. NELSON.

(Circuit Court, N. D. Illinois, E. D.   January 8, 1912.)

No. 29,415.

1. PATENTS (§ 51*)—ANTICIPATION—PRIOR KNOWLEDGE BY OTHERS.

Knowledge by others of a device before its alleged invention by an applicant for a patent in a form adapted to practical use constitutes an anticipation, and renders it unpatentable under Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), although it was not used, and such knowledge need not have been more than two years before the date of the application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 66–74; Dec. Dig. § 51.*]

2. PATENTS (§ 328*)—ANTICIPATION—PIPE COUPLING.

The Burgess patent, No. 906,099, for a pipe coupling is void for anticipation because of prior knowledge of the device by others than the patentee.

In Equity. Suit by the Imperial Brass Manufacturing Company against Alexander Nelson, doing business under the name and style of the A. Nelson Manufacturing Company. On final hearing. Decree for defendant.

George E. Waldo, for complainant.
Arthur F. Durand, for defendant.

SANBORN, District Judge. This is a suit in equity for an injunction and an accounting brought by the complainant, the Imperial Brass Manufacturing Company, against the defendant, Alexander Nelson, for infringement of United States letters patent No. 906,099, dated December, 1908, for a compression coupling. The patent in suit was issued to Walter S. Burgess, and was by him assigned to complainant on December 24, 1908.

The subject-matter of the patent in suit, and which is here in controversy, is a form of coupling or fitting for connecting sections of pipe or tubing end to end; said couplings being known as "compression couplings."

The following claims, only, are sued upon:

"3. In combination, a pair of tubular coupling-members threaded one into the other, the inner end of the inner coupling-member being annularly recessed and shouldered to receive the end of the member to be coupled, and a hard-metal sleeve inclosed within the coupling-members and tapered longitudinally to a bendable annular edge, the larger end of this sleeve abutting against the outer coupling-member and the thin tapered edge entering the

---

recessed entrance end of the other member and having contact only with the inner annular corner thereof, for the purpose set forth.

"4. In combination, a pair of tubular couplings and means for adjustably connecting them, one of the couplings being provided with an internal shoulder against which the coupled member abuts and with a flaring entrance end, and a hard-metal sleeve tapered forwardly to a thin bendable edge the larger end of this sleeve having abutment against one of the coupling-members and its tapered end extending into the flared mouth of the other member and having an annular contact near its tapered end with the flared entrance end aforesaid, whereby when the coupling-members are drawn hard together the said thin bendable edge of the sleeve will be swaged inwardly to form an inwardly extending annular bead and a similarly shaped groove in the coupled member."

The accompanying cuts illustrate the complainant's and the defendant's device:

Complainant's.

CUT No. 1.

Nut          Cone          Nipple

Defendant's.

CUT No. 2.

The defenses relied on are that the invention in question was anticipated by the prior art, was "known or used by others in this country" before the application for the patent in suit, and was "in public use or on sale for more than two years prior to the application" under the provisions of section 4886, Revised Statutes (U. S. Comp. St. 1901, p. 3382).

The patent in suit was applied for January 13, 1908, and the evidence does not show any earlier time as the date of invention. It is shown in the proofs that the defendant made compression joints something like the patent device several years before date of application, but the proof of their use and of their exact construction is not entirely satisfactory. It appears, however, that in the spring and summer of 1907 the McCanna Manufacturing Company caused to be made blue prints of various parts of a compression joint identical in appearance with the complainant's device, and on June 20th they quoted prices to the Nelson Company on various coupling parts, in which also 10,000 of the compression cone shown in the cut, or one substantially like it in appearance, were included. Under various dates in September, 1907, the record shows receipts of payments of considerable numbers of these parts, including the cones referred to. Prior knowledge by others than the patentee of a device in appear-

ance similar to the patented coupling is therefore fully shown by the record. In addition to this, an attempt was made to show use of the patented device more than two years prior to the date of application, but on this point the proof is not clear enough to warrant a conclusion of a prior use.

[1] If, therefore, the record shows knowledge without use of a device identical with the patented coupling, it is not necessary to prove actual use. If the device known to others was competent and capable of producing the same results as that of the patent, there is sufficient anticipation. Stitt v. Eastern R. Co. (C. C.) 22 Fed. 649; Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Buser v. Novelty Co., 151 Fed. 478, 81 C. C. A. 16. The prior knowledge need not be more than two years before the patent date. Brush v. Condit, 132 U. S. 48, 10 Sup. Ct. 1, 33 L. Ed. 251; Mast Foos Co. v. Stover, 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Wilson v. Townley, 125 Fed. 491, 60 C. C. A. 327; Bates v. Coe, 98 U. S. 46, 25 L. Ed. 68; Eastman v. Mayor, 134 Fed. 844, 69 C. C. A. 628. As to the effect of a sale, or sample, as showing knowledge to negative novelty, see Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Dalby v. Lynes (C. C.) 64 Fed. 376.

[2] The only question, therefore, is whether the device previously known to the defendant and the McCanna Company was substantially identical with the patented coupling, as well as capable of practical use. If there is a reasonable doubt on either of these matters, no anticipation should be found.

The drawings referred to, made in the summer of 1907, are quite similar to the patented device. By reference to the accompanying cuts, it will be noticed that the nipple or center member in each cut is an externally threaded cylinder, into which the cones shown on each side are designed to be forced by the nut shown at each end of the cuts. In the patent device, as well as in the alleged infringing construction, the flaring mouth of the nipple has a different and more obtuse bevel than that of the cone, so that the latter, when inserted, will strike first at its extreme smaller end, and, when the nut is screwed up, and a pipe or rod inserted through all of these members, the thin edge of the small end of the cone is forced or swaged around the pipe or rod, making a perfectly tight connection without solder or braising. Now it is evident that, in order to produce this result, the cone bevel must be made at a more acute angle than that of the nipple. If the bevel angles are the same, the force of the nut will be applied against the body of the cone, and not to its edge, and the desired result will not follow.

It is claimed by counsel for complainant that this is just what is shown in these blue prints, as well as by certain exhibit couplings offered in evidence. He says:

"In the coupling of the patent in suit, the mouth of the nipple is flared in such manner that it engages the tapered surface of the cone closely adjacent to its thin edge, so that, when the nut is tightened in forming a pipe connection, the thin, bendable edge of said cone, where it contacts with the mouth of the nipple, will be swaged or compressed inwardly into the pipe so as to

form an interlocking bead and groove in said cone and pipe, respectively, which will positively connect said cone to said pipe and will form a tight joint without soldering the cone to the pipe—distortion or compression of said cone and pipe being confined to the thin, bendable edge of said cone in contact with the mouth of said nipple. But in defendant's exhibit couplings under consideration the nipple has a long straight-sided beveled mouth into which cone fits, the angles of said beveled mouth and cone being practically the same, in this respect resembling the old style solder couplings, in which the cones are soldered to the pipes and form in practical effect integral parts thereof, much more nearly than they do the couplings of the Burgess patent in suit. Counsel for defendant contends that the angles of the beveled mouth of the nipple and of the cone of defendant's exhibit couplings under consideration are different, and that pipe connections having interlocking beads and grooves will be formed if the nuts of said exhibit couplings are tightened or set up so as to force the cones into the beveled mouths of the nipples. Complainant asserts, however, that the angles of the beveled mouth of the nipple and of the cone in defendant's said exhibit couplings are to all practical purposes the same, or that any slight initial difference which may exist is immaterial for the reason that the operation of forcing said cone bodily into the beveled mouth of the nipple would almost immediately cause said cone to exactly conform to the beveled mouth of said nipple, long before said cone was forced a sufficient distance into the mouth of said nipple to form an interlocking bead and groove which would connect said cone to the pipe. And this conformation of the cone to the beveled mouth of the nipple will be expedited by the stretch or expansion of the large end of the cone under the pressure of the nut when tightened. Thus, with defendant's said exhibit couplings, the formation of an interlocking bead and groove in the cone and pipe, respectively, will involve, not merely the compression or distortion of the thin, bendable edge of the cone and of the pipe directly beneath the same, but will also require compression or distortion of the cone throughout the entire length of the beveled mouth of the nipple. And this, owing to the increased thickness of said cone back from its thin edge, will very greatly increase the force necessary for making said coupling; that is, for forming said interlocking bead and groove, as compared with the force required for forming said interlocking bead and groove, using couplings of the patent in suit, in which the distortion is confined to the thin, bendable edge of the cone."

I have read all the evidence, and carefully examined the blue prints and all of the numerous exhibit couplings in proof. The blue prints of the cone and nipple show that the bevel of the cone is sharper than that of the nipple, but not very much. But the physical exhibits, the earliest one being more than two years older than the patent application, almost invariably show that the cone will not fit into the flaring mouth of the nipple, but first strikes on or near its small end. This is true of the two spark-plug Exhibits 48 and 50, the cone Exhibit 8, the nipple Exhibit 11, and the oiler Exhibits 44 and 49. As to these exhibits, the testimony as a whole is quite satisfactory and convincing, and there is a good deal of it. It clearly shows that the patent device was known to others before the application, and in a form adapted to practical use. Such use also clearly appears, but not more than two years before such application was filed. Even within the strict rule of the Circuit Court of Appeals of this circuit, as held in H. Mueller Mfg. Co. v. Glauber, 184 Fed. 609, 106 C. C. A. 613, prior use is shown within the two-year period. Prior knowledge by others than the inventor also appears within the rule of Stitt v. Eastern Ry. (C. C.) 22 Fed. 649, and Buser v. Novelty Tufting Machine Co., 151 Fed. 478, 81 C. C. A. 16.

The bill should be dismissed, with costs.