842

BOWMAN DAIRY COMPANY, Plaintiff,

v.

AERATED CONTAINER CORPORA-
TION, Defendant.

No. 52 C 430.

United States District Court
N. D. Illinois, E. D.
April 30, 1957.

Dawson, Tilton & Graham, T. L. Til-
ton, Horace Dawson, Chicago, Ill., for
plaintiff.

Olson, Mecklenburger, von Holst, Pen-
dleton & Neuman, Sidney Neuman, Chi-
cago, Ill., for defendant.

KNOCH, District Judge.

This case came on to be heard before
the Court on the pleadings and the evi-
dence, consisting of oral testimony, docu-
mentary proofs, and physical exhibits.
Witnesses were called by the respective
parties, whose testimony was transcribed
in the record.   The Court has had the
benefit of argument by counsel upon
briefs.   The Court has reviewed the rec-
ord and briefs of counsel, weighed care-
fully the arguments presented and con-
sidered the authorities advanced by re-
spective counsel in support of their re-
spective claims.

Upon a consideration of the whole
case, the Court makes the following:

Findings of Fact

1.   Plaintiff, Bowman Dairy Compa-
ny, is a corporation organized and ex-
isting under the laws of the State of
Illinois, and has its principal place of
business at Chicago, Illinois.   Defend-
ant is a corporation organized and ex-
isting under the laws of the State of
Delaware, and has its principal place of
business at Chicago, Illinois.

2.   This is an action for damages and
an injunction against defendant for al-
leged infringement of United States Pat-
ent No. 2,487,434 issued November 8,

1949, of which plaintiff is the owner, on an application of Albert E. Geiss and John A. Montgomery, filed September 23, 1948.

3. Claim 5 of Geiss and Montgomery Patent No. 2,487,434, and no other, is here in suit; claim 5 having been selected as typical for the purpose of determining the issues herein of infringement and validity. Claim 5 reads as follows:

"5. In combination with a container cap having an opening therethrough, a resilient tubular plug extending through said opening and having a flange engaging the inner surface of said cap, said plug being provided with a tapered valve seat on its inner side, a pin of lesser diameter than the internal diameter of the passage of said body extending through said body, said pin being provided on its inner end with a valve head adapted to engage said seat and being provided on its outer end with a lateral projection limiting inward movement of said pin, and a tubular sleeve extending outwardly from said plug and enclosing the outer end of said pin, said tube being provided at its tip end with spaced fingers integral with said tube."

4. Claim 5 of the Geiss and Montgomery patent covers a valve and dispenser device in combination with a container cap, which is especially adapted for use on pressure whipped cream packages of the one-trip or throw-away type.

5. Defendant's accused structure is shown in a drawing, Exhibit A, forming a part of defendant's answers to plaintiff's interrogatories dated September 2, 1953. This structure is substantially the same as that shown in plaintiff's exhibit 9 and defendant's exhibit 45, discussed extensively during the trial.

6. At the time Geiss and Montgomery started the collaborative work which led to the patent in suit, pressure whipped cream packages of the refillable, soda fountain type were on the market, and there was an apparent need for extending the process of fluffing cream by means of a gas under pressure to disposable, one-trip, home-type packages. No such packages, however, were on the market. Plaintiff attributes the lack of such packages to the difficulty of developing an inexpensive and functionally satisfactory valve and dispenser for such a package. In the light of all the evidence, the Court cannot agree with this explanation.

7. Plaintiff's patent relates to the general art of valves, and more particularly to valves for small portable containers employing a headed valve stem supported within a central aperture in a resilient seat or plug.

8. Valves of this type are old and well known, dating back to at least 1865 and are disclosed in the prior patent art in use on bottles, bottle caps, corks, stoppers, threaded housings, metal caps, can covers, flexible hoses and the like. Prior to the work of Geiss and Montgomery a wide range of mechanical choices were available to the designer of a headed stem valve structure. These included spring preloaded valve closure or a free floating valve stem, serrated nozzles for decorator effects, internal flanges to improve sealing, and hollow or solid valve stems. The optional use of either a lateral force or an axial force for opening the valve was also well known.

9. Such valves were employed for dispensing pressurized cream at least as early as 1935. It was known at that time that packaging cream in a container with a soluble gas under pressure would produce a gas and cream solution. Upon discharging the cream through a small orifice the entrapped gas expanded to produce cream very much the same as mechanically whipped cream. However, the early uses were restricted to returnable packages for lack of an inexpensive disposable can. Following World War II, the Crown Can Company marketed an inexpensive seamless can with an associated apertured cap suitable for this application and many valve assem-

blies were designed substantially contemporaneously for use therewith.

10. The Geiss and Montgomery patent discloses two such valve structures adapted for use with the Crown seamless can. The first valve illustrated in figures 2 and 3 comprises a resilient plug 17 fitted into the standard aperture of cap 13 and a solid pin 24 loosely fitted and slidable within the plug, the head 25 forming a seal with the plug 17 only when the can is pressurized. A sleeve 21 may be placed on the plug 17 to serve as a cream guide. The sleeve has spaced fingers 23 which constitute a decorator's tip to produce an uneven fluffy appearance in the dispensed product. The second structure, illustrated in figure 4, is similar but eliminates the need for the separate sleeve 21. The plug 27 is extended beyond the end of pin 24 and notched at the end to perform the same functions as the sleeve.

11. The accused device consists of a resilient plug fitted into the standard aperture of the Crown cap and a valve head and nozzle assembly mounted on the plug. The head has a stem which extends into the nozzle and is shaped to engage the nozzle. The dimensions are such that the plug is compressed between the nozzle and head whereby a rigid assembly is formed in which the plug acts as a spring. The nozzle is notched to provide a decorator's tip.

12. The device described in the patent in suit and the accused structure differ in the following respects: (1) the accused valve is normally closed and held closed by the compression of the resilient plug while the valve head of the patented device hangs in the open position until the can is pressurized and the pressurizing equipment removed; (2) in the accused device, the valve head, stem and nozzle are formed together and maintained as a rigid assembly by the compression of the resilient plug while in the patented device the pin will not at any time contact the sleeve; (3) in the accused device the nozzle, plug, stem and head are assembled as an integral structure while in the patented device the pin and head hang freely from the plug and the sleeve is removable at any time; (4) in the accused structure there is no normal movement between the stem and plug, while in the patented device the pin and plug are so related that there is normally limited free axial movement between an inward normally open position and an outward position without distortion of any valve part and this movement is relied upon for valve operation.

13. Defendant set up in its answer or gave the required notice, and introduced at the trial, the following patent references:

| | Patent No. | Patentee | Date |
|---|---|---|---|
| | 48,341 | Kloenne | June 20, 1865 |
| | 207,279 | Holmes | Aug. 20, 1878 |
| * | 549,678 | Miller | Nov. 12, 1895 |
| | 574,392 | Clark | Jan. 5, 1897 |
| | 1,137,530 | Pratt et al. | Apr. 27, 1915 |
| | 1,733,645 | Butts | Oct. 29, 1929 |
| | 1,864,978 | Cottrell | June 28, 1932 |
| | 1,869,049 | Card | July 26, 1932 |
| | 2,149,584 | Davis | Mar. 7, 1939 |
| * | 2,204,015 | Iftiger et al. | June 11, 1940 |
| * | 2,326,641 | Heeter et al. | Aug. 10, 1943 |
| | 2,351,751 | Fruin et al. | June 20, 1944 |
| | 2,376,052 | Hacmac | May 15, 1945 |
| * | 2,376,404 | Thoms | May 22, 1945 |

References marked "*" were cited in the file history of Geiss and Montgomery patent numbered 2,487,434.

14. The valve assembly illustrated in Tomasek and Zimmer patent No. 2,615,-597 was conceived, actually constructed and actually used to dispense cream at least as early as September 22, 1947, and it was not thereafter abandoned. The valve was placed in commercial use at least as early as July 21, 1948. It is plaintiff's position that the Tomasek and Zimmer patent is not a prior art reference against the Geiss and Montgomery patent because of its later filing date. It was, however, stipulated that it did disclose subject matter conceived and reduced to practice prior to the date on which the subject matter of the patent in suit was conceived and reduced to practice by Geiss and Montgomery.

15. Prior to the work of Geiss and Montgomery, one Tubbs designed a valve comprising a rubber plug inserted in a container cap with a thin rubber flange to improve the seal and with which a tiltable, detachable actuating device, nozzle and decorator's tip could be used. Such a rubber plug valve was developed by defendant for use with a disposable whipped cream container and was submitted for sales purposes to plaintiff and the patentee, Geiss, prior to any work by Geiss or Montgomery on the valves shown in patent 2,487,434.

16. The prior art illustrates every structural element of the Geiss and Montgomery patent to be old. The centrally apertured metal container cap was old in at least Butts, Fruin et al., Thoms, Tomasek et al., and Tubbs. The resilient plug was old in at least Kloenne, Miller, Clark, Butts, Card, Tomasek et al., and Tubbs. The solid pin was old in at least Clark, Cottrell, Davis, and Heeter et al. A free floating, axially slidable pin was old in at least Clark, Cottrell and Davis. The sealing flange was old in at least Miller, Butts, Thoms, Tubbs, and Tomasek et al. The nozzle was old in at least Holmes, Card, Cottrell, Fruin et al., Thoms, Tubbs, and Tomasek et al. The tilting principle was employed by at least Pratt et al., Cottrell, Card, Davis and Tomasek et al. Valve assemblies were incorporated with containers and caps for dispensing cream under pressure in at least Fruin et al., Tubbs, and Tomasek et al. A decorator's tip was old in at least Iftiger et al., Hacmac, Tubbs, and Tomasek et al. Every element entering into the alleged combination of claim 5 of the patent in suit was old and served no different function or purpose in the combination than it served separately.

17. The Patent Office relied solely upon Miller patent No. 549,678 in rejecting original claims 1–4 and 7 of the patent application. The Miller patent was not tiltable and did not relate to whipped cream dispensing. Nevertheless the plaintiff cancelled all of the rejected claims and retained only claims which include the limitation of limited inward movement of the pin. If either the Patent Office or the plaintiff had believed that dispensing whipped cream was a new art with unique problems, or that a tiltable valve presented great problems or difficulties, one would expect the Patent Office not to reject the claims on the Miller patent nor the plaintiff to have acquiesced in the rejection, and to have abandoned the subject matter of the rejected claims. Thus, it appears that the Patent Office and the plaintiff did not find that the patent in suit solved any problems unique to tiltable valves or the dispensing of whipped cream but formed a part of the general valve art.

18. The file wrapper indicates that plaintiff in securing its patent did accept only claims limited to a pin having means providing limited inward movement. The plaintiff argued before the Patent Office that a freely slidable pin in which sliding movement facilitated valve operation and in which no spring means maintained the valve in the closed position was novel. This concept however was old in the patents to Clark, Davis, and Cottrell, which were not before the Patent Office. In allowing Claim 5, the Patent Office did not have before it any patent showing a valve employing a freely movable pin. Thus any presumption that the Patent

Office had before it the most pertinent prior art is vitiated.

19. There is no new, unusual, or unexpected result produced by the combination set out in Claim 5 of the Geiss and Montgomery patent. The claim is broadly directed to a valve assembly. It does not expressly recite tilting operation, does not expressly require pressure, and it does not expressly relate to whipped cream. If there is any improved operation or reduced cost as discussed extensively by plaintiff's witnesses, these result, not from any feature set out in the claim, but from the logical choice of components, dimensions, and parts relationships, all of which are well known in the prior art and available to the skilled mechanic.

20. The plaintiff has attempted to establish the functional advantages of the patented device by comparison with only one prior art device, namely the structure of Tomasek and Zimmer. While plaintiff alleges the latter valve is costly, uncontrollable, and subject to leakage and accidental discharge in the refrigerator, plaintiff itself sells cream packaged with the Tomasek and Zimmer valve, and more than 45 million valves of this type are sold each year; at least ten times the number of Geiss and Montgomery valves used by plaintiff and its licensee.

21. The specification of the patent in suit is clear and unambiguous as to the *modus operandi* of the valve structure and the purpose of the sliding limited inward movement of the valve pin. The specification states "The pin 24 is slidable within the passage 18 to facilitate opening and closing of the valve." Claim 5 in suit *inter alia* specifies that the pin is "provided on its outer end with a lateral projection limiting inward movement of said pin." This claim construed in the light of the specification is limited to the valve structures disclosed in the Geiss and Montgomery patent and requires the employment of a freely slidable pin. This sliding movement is the actuating phenomenon which opens and closes the valve. This construction of the claim is confirmed by the file wrapper and the proceedings in the United States Patent Office leading to the grant of the patent in suit which show that in securing its patent, plaintiff accepted only claims limited to a pin providing limited inward movement. Every claim allowed to the applicants includes the limitation in question, whereas every claim requested but not allowed did not have such a limitation. It appears to the Court that the clause constitutes a file wrapper estoppel limitation.

22. All valve mechanisms include certain basic elements. All of the structures discussed during this trial included a relatively soft annular seat, a stem and head movable relative to the seat, and some means for guiding the discharged fluid away from the valve. These are the only positively claimed structural elements of Claim 5. The remainder of the claim language describes the shapes of the basic parts, the relationships there between, and the function and operating character of the valve.

23. The accused valve has a different functional relationship of the valve elements and operates on a different principle than the patented valve. The accused valve tilts a valve head in direct response to the tilting of a connected nozzle without substantial distortion of the plug, while in the patented device the head and pin appear to slide inwardly upon distortion of the resilient plug, irrespective of the presence or absence of the sleeve. In the accused device the nozzle and stem are integrated by the resilient compression of the plug, and in all normal uses operate as a unitary structure, while in the patented device the pin hangs loosely from the plug and never contacts the sleeve.

24. Claims 3, 4 and 5 of the Geiss and Montgomery patent and a patent application of Michel, Ser. 71,853, owned by defendant, were involved in Patent Office Interference No. 84,372. The Michel application matured into patent 2,612,293, which discloses, in figure 7, a valve mechanism very similar to the accused structure. Michel abandoned the contest in the Patent Office, without taking any tes-

timony after attempting unsuccessfully to have the Patent Office find the claims broad enough to read on the structure illustrated in figure 1 of the Michel patent, and after attempting unsuccessfully to have the Patent Office include additional claims in the interference which would omit the recitation of "limited inward movement." The sole issue in a Patent Office interference is priority and for purposes of an interference claim language is construed as broadly as the words will permit. The issue of infringement thus never arises in an interference proceeding.

25. Claim 5 of the Geiss and Montgomery patent, when construed in the light of the specification, is not infringed by defendant's valve assembly.

26. Claim 5, when further construed in view of the file wrapper and proceedings before the Patent Office, is not infringed by defendant's valve assembly.

27. The conception and production of the combination defined in Claim 5 of the patent in suit did not involve the exercise of invention but rather involved mere mechanical skill.

Conclusions of Law

1. The Court has jurisdiction of the parties and of the cause of action alleged in the complaint.

█ 2. The Tomasek and Zimmer device illustrated in patent 2,615,597 constitutes prior knowledge, within the meaning of 35 U.S.C. § 102(a), as to the device disclosed in the patent in suit and may properly be considered in determining whether that device constitutes patentable invention. It is immaterial that the Tomasek and Zimmer device was not placed in commercial use prior to June 1, 1948. Corona Cord Tire Company v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Imperial Brass Mfg. Co. v. Nelson, C.C.N.D.Ill., 194 F. 165.

3. Claim 5 of the Geiss and Montgomery patent in suit is invalid because it defines no more than a combination of old and well known valve elements where-in each element serves no new additional or different function in the combination than it served separately out of it and thus fails to meet the exacting standard of patentable invention required by Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162. Hamilton Mfg. Co. v. Illinois Surgical Supply Co., 7 Cir., 193 F.2d 938, 942; Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 7 Cir., 230 F.2d 409; Pleatmaster Inc., v. J. L. Golding Mfg. Co., 7 Cir., 240 F.2d 894.

█ 4. It is immaterial that in no one of the prior art references are all the elements of Claim 5 of the patent in suit combined and that no one prior patent or publication teaches the specific form of device disclosed in the patent in suit. The question is rather whether the alleged improvement is taught by the prior art. Richmond Screw Anchor Co. v. Umbach, 7 Cir., 173 F.2d 521, 524; General Time Corp. v. Hansen Mfg. Co., 7 Cir., 199 F.2d 259, 264; Smith v. Dravo Corp., 7 Cir., 203 F.2d 369, 380. The prior art disclosures here are such that a person skilled in the art might readily design the improvement which Geiss and Montgomery claimed to have made. It therefore was obvious and involved only an exercise of mechanical skill. Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, 572; National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26, 29; Pleatmaster, Inc. v. J. L. Golding, supra.

5. Claim 5 of the patent in suit must be construed in the light of the specification and when so construed it cannot be read upon the defendant's device.

6. Claim 5 of the patent in suit must be construed in the light of the file wrapper and the proceedings leading to the grant of the patent and when so construed it cannot be read upon defendant's device.

7. Defendant's device cannot be held as an infringement under the doctrine of equivalents for the reason that plaintiff abandoned claim to any structure which

did not include limited inward movement of a freely slidable pin by its arguments before the Patent Office and by cancellation of all claims which omitted this feature. Exhibit Supply Co. v. Ace Patents Corporation, 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736; Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645.

8. Even on the assumption that the defendant's device corresponded with the letter of Claim 5 in suit the charge of infringement is not made out because the accused device comprises a different functional relationship of the elements and has a different *modus operandi* than the patented device. Defendant has so changed the principle of the patented device and the relationship of parts that if literally construed to read on defendant's device Claim 5 would cease to represent the contribution or improvement of Geiss and Montgomery. Westinghouse v. Boyden Brake Co., 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136.

9. The doctrine of claim differentation must always yield to the paramount principle of patent construction that a patentee's broadest claim can be no broader than the actual invention disclosed in the specification. Consequently it is immaterial that certain Geiss and Montgomery claims not in suit are more explicit than Claim 5 in defining the particular valve assembly found in the patent in suit. Burroughs *Adding Machine* Co. v. Felt & Tarrant Mfg. Co., 7 Cir., 243 F. 861, 870; The Texas Co. v. Globe Oil & Refining Co., 7 Cir., 225 F.2d 725, 737.

10. Defendant has never directly admitted infringement as such or as that question has arisen in this action. As the claim in suit is clear and the facts are not in dispute there is no infringement. Accordingly, there can be no reason for invoking any estoppel against defendants to deny infringement on the basis of a Patent Office interference where the question of infringement was not in issue. W. F. & John Barnes Co.

v. International Harvester Co., D.C.N.D. Ill., 51 F.Supp. 254, 261.

11. Defendant is entitled to a judgment dismissing the complaint and to an award of costs.